## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Tanaka Birdo,

      Plaintiff,

    v.

Dave Hutchison, *Sheriff*; and
Jocelyn, *RN*,

      Defendants.

Case No. 20-cv-1925 (MJD/ECW)

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on Defendant Dave Hutchinson's[1] Motion to

Dismiss (Dkt. 25) ("Hutchinson's Motion") and Defendant Jocelyn Rufino's[2] Motion to

Dismiss (Dkt. 31) ("Rufino's Motion") (collectively, "Motions"). The case has been

referred to the undersigned United States Magistrate Judge for a report and

recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated

below, the Court recommends the Motions be granted.

---

[1] Hutchinson's name is misspelled as "Hutchison" in the Complaint. (*Compare* Dkt. 1 at 1, *with* Dkt. 25.) The Court refers to him as "Hutchinson" in this Report and Recommendation.

[2] The second named Defendant is identified as "Jocelyn RN" or "Nurse Jocelyn RN" in the Complaint. (Dkt. 1 ¶¶ 2, 5, 10.) In her memorandum in support of her Motion, Defendant Jocelyn states that "'Jocelyn, RN', as identified in Plaintiff's Complaint, refers to jail nurse Jocelyn Rufino." (Dkt. 33 at 1 n.2.) The Court refers to her as "Rufino" in this Report and Recommendation.

## I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The allegations in this case stem from Plaintiff Tanaka Birdo's ("Birdo" or "Plaintiff") time as a pre-trial detainee at the Hennepin County Adult Detention Center ("ADC" or "Jail") in July through at least September 2020.  (*See* Dkt. 1 ¶ 7; *id.* ¶ 18 (stating that Birdo had been "here" for forty-two days, as of September 6, 2020); Dkt. 33 at 2 (Rufino brief stating that Birdo was detained from June 29, 2020 until December 11, 2020 and citing state court cases).)  Birdo claims violations of his rights under the Eighth, Ninth, and Fourteenth Amendments to the U.S. Constitution, specifically deliberate indifference to his medical needs, cruel and unusual punishment, and violation of equal protection under the law.  (Dkt. 1 ¶¶ 4, 8, 11, 13, 14, 15, 18.)  Birdo sues both Defendants in their official and individual capacities and seeks an award of compensatory, punitive, and "declaratory" damages.  (Dkt. 1 at 6.)[3]

The first named Defendant is Dave Hutchinson, who is the Hennepin County Sheriff.  (*Id.* ¶¶ 2, 7; *see also* Dkt. 26 at 1.)  The second named Defendant is identified as "Jocelyn RN" or "Nurse Jocelyn RN" in the Complaint (Dkt. 1 ¶¶ 2, 5, 10) and is identified in her memorandum as Jocelyn Rufino, a Jail nurse (Dkt. 33 at 1 n.2).

Birdo alleges that he had an appointment at the Hennepin County Medical Center ("HCMC") orthopedic clinic on July 13, 2020 but, "Was not able to go.  Refused!"  (*Id.* ¶ 8.)  He alleges that this refusal constituted deliberate indifference to his medical needs.

---

[3]    Unless otherwise noted, all page numbers refer to the CM/ECF pagination.

(*Id.*)  Birdo alleges that he filed a grievance "about [his] knees" on August 6, 2020, which "was not answered in seven days," a "violation of their own policies."  (*Id.* ¶ 9.)

On the August 6 grievance, Birdo wrote, "My appointment on 7-13-2020 was denied at HCMC," and went on to detail his knee problems, which the Court describes in more detail below.  (Dkt. 34-1, Ex. 2 at 1.)[4]  In the area captioned "What action or outcome are you requesting?" Birdo wrote, "To be taken to see an orthopedic.  Be able to have my knee's [sic] replace!  Especially my right knee first.  And as soon as possible."  (*Id.*)  The lower portion of the grievance is signed by "Olivia, RN" on August 10, 2020, and, in a box that says, "GRIEVANCE IS," with options for "ACCEPTED" and "REJECTED," she circled, "ACCEPTED."  (*Id.*)  The back page of the grievance contains a note (which appears to be written by the same Olivia, RN) that reads as follows: "You were seen by Robin Hoenisch – a provider from HCMC (ortho).  You had tooth abscess at the time so steroid injections was on hold.  You have to be off 2 weeks from antibiotics before you can have steroid injections.  You have ortho follow-up appointment coming up."  (*Id.* at 2.)

Birdo alleges that he filed another grievance on August 15, 2020, and "Nurse Jocelyn RN circled Accepted."  (Dkt. 1 ¶ 10.)  Birdo states that he "[w]as suppose[d] to be taken outside, but was not," and the grievance was "not adhered to!"  (*Id.*; *see also id.* ¶ 17 (citing Dkt. 1-1 (August 15 grievance at Dkt. 34-1, Ex. 2 at 3)) ("What action or

---

[4]    As the Court explains in Section III.A, these grievances were filed by the parties several times in this case, and the Court cites to the copies at Docket No. 34-1 because those copies include the front and back pages.

outcome ARE YOU requesting.  Circle Accepted.  Not honored!").)  He alleges that this was a violation "of their own grievance policy."  (*Id.* ¶ 10.)

On the August 15 grievance, Birdo again described his knee problems and also wrote, "My appointment to HCMC on 7-13-2020 was denied.  Also I filed a grievance on this issue.  Never got it back."  (Dkt. 34-1, Ex. 2 at 3.)  In the area captioned "What action or outcome are you requesting?" Birdo wrote, "That I be taken to see an orthopedic surgeon.  Get my right knee replaced.  Then my left knee.  No injections help me!  They are useless."  (*Id.*)  The lower portion of this grievance is signed by "Jocelyn RN" and the "ACCEPTED" option is again circled.  (*Id.*)  The back page of the grievance contains two notes.  (*Id.* at 4.)  Rufino states that she signed the first note (Dkt. 33 at 3), and there is no signature on the second (Dkt. 34-1, Ex. 2 at 4).  The first appears to be dated August 17, 2020 and states, "Thank you for letting us know.  You are being referred again with the orthopedic dept."  (Dkt. 34-1, Ex. 2 at 4.)  The second is undated and states, "The last appoint was for 8/13/20 and was rescheduled for the next available with the provider for you to be seen by an orthopedic provider within the next week." (*Id.*)

Birdo alleges that he suffers from pain and some kind of degeneration in both knees, as follows: "My right knee is about gone, bone on bone."  (Dkt. 1 ¶ 11.)  "For many years no medicine have helped me.  Have taken five different kinds of pain medicines.  No help useless."  (*Id.* ¶ 12.)  "My knees buckle at times sharp pain.  Have trouble sleeping.  At times my right knee locks have to drag it, barely walk sometimes."

(*Id.* ¶ 14.)  Several of his allegations of medical issues with his knee also state that there has been a violation of his Eighth Amendment rights.  (*See id.* ¶¶ 11, 14, 15, 18.)

Birdo makes similar allegations regarding his knees in the grievances, including, in one instance, invoking the Eighth Amendment: "My knees are not getting better.  Thirty years my knees have bothered me.  Their [sic] about gone. . . .  Suffering, pain, not able to sleep well.  Denied proper care.  Violation of the 8 Amend."  (Dkt. 34-1, Ex. 2 at 1 (August 6 grievance).)  "My knees right especially 'bone on bone.'  My knees buckle that hurts.  Constant pain, can not sleep well.  Can not hardly walk!  The longer I'm denied knee replacements the worser their [sic] going to GET!"  (*Id.* at 4 (August 15 grievance).)

Birdo also alleges in this Complaint that he is 63 years old; will "be here many more months," as his bond is too high; and has suffered in jail for forty-two days.  (Dkt. 1 ¶¶ 15, 16, 18; *see also* Dkt. 34-1, Ex. 2 at 1 (August 6 grievance stating that Birdo is 62 years old and has "a hold" on him and "can not bond out").)

Regarding his claims under the Ninth and Fourteenth Amendments of the Constitution, Birdo alleges, "Other residents have been taken outside for medical issues.  Not me unfair" (Dkt. 1 ¶ 13), and further, "My medical needs see an orthopedic not met.  Unequal treatment!" (*id.* ¶ 15).

The Complaint was docketed on September 9, 2020.  (Dkt. 1.)  Birdo filed a motion for a temporary restraining order on October 19, 2020, which was denied on December 14, 2020.  (Dkts. 5 (Motion), 12 (Report and Recommendation), 18 (Order).)  On February 1, 2021 Defendants filed the Motions and supporting materials.  (Dkts. 25-

39.)  Birdo filed his Response and supporting materials on April 28, 2021.  (Dkts. 47-48.)
Defendants each filed a letter "representing that no reply memorandum will be filed and
[that the Defendant] rests on [his or her] pleadings filed on February 1, 2021."  (Dkts. 49,
50.)

## II.    LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),
the pleadings are construed in the light most favorable to the non-moving party, and the
facts alleged in the complaint must be taken as true.  *See Ashley Cnty., Ark. v. Pfizer, Inc.*,
552 F.3d 659, 665 (8th Cir. 2009).  In addition, a court must afford the plaintiff all
reasonable inferences from those allegations.  *See Blankenship v. USA Truck, Inc.*, 601
F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under
Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil
Procedure 8 and meet the principles articulated by the United States Supreme Court in
*Iqbal* and *Twombly*.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the
claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The pleading
standard articulated by Rule 8 "does not require detailed factual allegations, but it [does
demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations
omitted).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of
the elements of a cause of action will not do.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 (2007)).  Thus, to "survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

> Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:
>
> While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. A district court, therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint.

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (cleaned up). Pro se complaints are construed liberally, but they still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citations omitted).

If matters outside the pleadings "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P.

12(d).  "Though matters 'outside the pleadings' may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading."  *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)).  Thus, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned, without converting the motion into one for summary judgment.  *Id.* (citations omitted); *see also Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

## III.    ANALYSIS

Birdo brings claims based on violations of his rights under the Eighth, Ninth, and Fourteenth Amendments to the U.S. Constitution.  (*See generally* Dkt. 1.)  Birdo sues Rufino and Hutchinson in their official and individual capacities.  (*Id.* at 6.)  Defendants each move the Court to dismiss Birdo's Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Dkts. 25, 31.)  The Court addresses Defendants' arguments below.

### A.    Documents Considered

The Court first addresses which documents it has considered in addition to the Complaint's allegations, beginning with the August 6 and August 15 grievances.  Birdo attached the August 15 grievance to his Complaint.  (*See* Dkt. 1-1, Ex. 1.)  The August 15 grievance is an "exhibit[] attached to the complaint whose authenticity is unquestioned"

and may be considered on a motion to dismiss under Rule 12(b)(6).  *Miller*, 688 F.3d at

931 n.3 (cleaned up).  Birdo did not attach the August 6 grievance to the Complaint.

However, the Complaint alleges the contents of the August 6 grievance (Dkt. 1 ¶ 9),

Birdo has not questioned the authenticity of the copy of the August 6 grievance filed by

Rufino with her Motion, and Birdo filed the front page of the August 6 grievance with his

Response (Dkt. 48, Ex. 3 at 1).  Consequently, the Court may consider the August 6

grievance when deciding a Rule 12(b)(6) motion.  *See Zean*, 858 F.3d at 526.

The Court also has considered the back pages of the August 6 and 15 grievances,

which were included in the copies filed by Rufino. (Dkt. 34-1, Ex. 2 at 2, 4.)  The

authenticity of Rufino's copies, including the back pages, was not challenged by Birdo.

The Court finds that the back pages are embraced by the Complaint and can be

considered because those pages, in combination with the front pages, form the entirety of

the grievances.  *See J.P. v. BCBSM, Inc.*, No. 18-CV-3472 (MJD/DTS), 2020 WL

7626655, at *3 (D. Minn. Feb. 24, 2020) ("Plaintiffs do not challenge the authenticity of

this document, just as BCBSM does not challenge the authenticity of the partial version

Plaintiffs attached to their Amended Complaint.  . . .  Still, because Plaintiffs attached a

part of the EOB to the operative complaint, they opened the door.  If part of the EOB is

attached to the Amended Complaint, then that complaint must necessarily embrace the

entire document, which may be considered on a motion to dismiss, for whatever it is

worth."), *R.&R. adopted*, 2020 WL 1442683 (D. Minn. Mar. 24, 2020); *Reg'l Multiple

Listing Serv. of Minn., Inc. v. Am. Home Realty Network, Inc.*, 960 F. Supp. 2d 958, 972

n.11 (D. Minn.), *modified*, 960 F. Supp. 2d 988 (D. Minn. 2013) ("Although the

complaint did not include the text of the entire e-mail, the Court may consider the e-mail in its entirety because it may consider material necessarily embraced by the complaint on a motion to dismiss.").

Rufino also submitted Birdo's medical records with her Motion (Dkt. 35, Ex. 1), and Birdo submitted an August 10, 2020 Inmate Request for Medical Services form ("Medical Services form") with his Response (Dkt. 48, Ex. 2 at 2). No party addresses whether these documents may be considered on a Rule 12(b)(6) motion, and neither Defendant sought summary judgment. Consequently, the Court will not convert the Motions to summary judgment motions, as Birdo has not had adequate notice of that possibility and a reasonable opportunity to present all pertinent material, as required by Rule 12(d). *See Machen v. Iverson*, No. CIV. 11-1557 DWF/JSM, 2012 WL 566977, at *12 (D. Minn. Jan. 23, 2012) (discussing the requirement of notice and noting that "in the case involving a *pro se* party, the Court must proceed with caution in converting a motion to dismiss to a motion for summary judgment"), *R.&R. adopted*, 2012 WL 567128 (D. Minn. Feb. 21, 2012).

As to the medical records, courts in this District have typically considered such records in deliberate indifference cases in the context of a summary judgment motion. *See, e.g.*, *Pinson v. Hadaway*, No. 18-CV-3420 (NEB/KMM), 2020 WL 5543749, at *2, 5 (D. Minn. Sept. 16, 2020); *Ramirez v. United States*, No. CIV. 11-2931 PJS/AJB, 2013 WL 646238, at *4, 6 (D. Minn. Feb. 4, 2013), *R.&R. adopted*, 2013 WL 646322 (D. Minn. Feb. 21, 2013). Here, while some of the medical records document Birdo's visits to the orthopedic clinic, they were not attached to the Complaint, nor were the records'

contents alleged in the Complaint. Similarly, the Medical Services form was not attached to the Complaint, and although it repeats the claims made in Birdo's grievances and in the Complaint (Dkt. 48, Ex. 2 at 2), its contents were not alleged in the Complaint. The Court declines to consider these documents in connection with the Motions.[5] *See Zean*, 858 F.3d at 526.

## B.    Individual Capacity Claims

The Court begins its analysis with the individual capacity claims. "To state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013).[6] "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*,

---

[5]    In any event, neither the medical records nor the Medical Services form would change the Court's recommendation. The medical records establish that Birdo was treated by orthopedic Physician Assistant Robin Hoenisch on July 16, 2020 and that he did not receive joint injections (and could not receive them for two weeks) due to the risk of infection from his tooth abscesses (Dkt. 35, Ex. 1 at 1-2), while the Medical Services form restates his grievances and states that, as of August 11, 2020, he had an appointment scheduled with an orthopedic clinic (Dkt. 48, Ex. 2 at 2).

[6]    Birdo does not expressly plead claims under 42 U.S.C. § 1983 in the Complaint. Because the Court liberally construes pro se pleadings "in a way that permits the layperson's claim to be considered within the proper legal framework," *Stone*, 364 F.3d at 914, the Court construes the Complaint as setting forth claims under 42 U.S.C. § 1983, which allows a person under certain circumstances to sue a governmental entity for violating his rights under the U.S. Constitution. Defendants characterized Birdo's claims as made pursuant to § 1983. (*See, e.g.*, Dkt. 26 at 2 (describing Complaint as alleging constitutional violations under § 1983); Dkt. 33 at 1 (describing claims as § 1983 claims).)

473 U.S. 159, 165 (1985).  "Government officials are personally liable only for their own misconduct."  *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) (citation omitted).

### 1.    Deliberate Indifference Claim Against Rufino

The Court first addresses Birdo's claim of deliberate indifference to his medical needs against Rufino in her individual capacity.  Rufino argues that "[e]ven if Plaintiff were to plausibly allege an objectively serious medical need, he has failed to allege that Rufino deliberately disregarded his serious medical need."  (Dkt. 33 at 10.)

Birdo's Eighth Amendment claims are based on Defendants' alleged deliberate indifference to his medical needs, specifically that the Jail's failure to treat his ongoing knee pain violates the Eighth Amendment's prohibition on cruel and unusual punishment. (Dkt. 1 ¶¶ 11, 14, 18.)  However, "[a]s a pretrial detainee, [his] right to medical care arises under the Due Process Clause of the Fourteenth Amendment."  *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014) (citation omitted).  Still, courts "apply the deliberate-indifference standard that governs claims brought by convicted inmates under the Eighth Amendment."  *Id.* (citations omitted); *see also Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (noting that pre-trial detainee's § 1983 claim of deficient medical care was "properly analyzed under the due process clause of the fourteenth amendment rather than the eighth amendment" but applying Eighth Amendment deliberate indifference standard).  "The Eighth Amendment obligates state prison officials to provide inmates with medical care."  *Laughlin v. Schriro*, 430 F.3d 927, 928 (8th Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  To survive a motion to dismiss, a claim of deliberate indifference to medical needs in violation of the Eighth

Amendment must allege both that the plaintiff "suffered from objectively serious medical needs" and that the defendant "actually knew of but deliberately disregarded those needs." *Fourte v. Faulkner Cnty., Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (cleaned up); *see also, e.g.*, *Jackson*, 756 F.3d at 1065 ("Whether an official was deliberately indifferent requires both an objective and a subjective analysis."). "Under the subjective prong, [a plaintiff] must show that an official actually knew of but deliberately disregarded his serious medical need. This showing requires a mental state akin to criminal recklessness. Consequently, [a plaintiff] must show more than negligence, more even than gross negligence to evince deliberate indifference." *Jackson*, 756 F.3d at 1065 (cleaned up).

Rufino addresses only the subjective prong. (Dkt. 33 at 10 ("Even if Plaintiff were to plausibly allege an objectively serious medical need . . . ").) Thus, the Court only considers whether Birdo has plausibly alleged that Rufino actually knew of but deliberately disregarded Birdo's serious medical need. *See Jackson*, 756 F.3d at 1065.

The Complaint alleges two ways in which Birdo's medical needs were disregarded. First, he alleges that he was "refused" or "denied" an appointment at HCMC orthopedic clinic on July 13, 2020 and after (in Birdo's view) Rufino had agreed to send him to an orthopedic appointment. (Dkt. 1 ¶¶ 8, 10, 17; Dkt. 34-1, Ex. 2 at 1, 3.) Second, his claim is based on the fact that he was not given an appointment with an

orthopedic surgeon and did not receive knee replacement surgery. (Dkt. 1 ¶ 15; Dkt. 34-1, Ex. 2 at 1, 3.)[7]

These allegations do not plausibly allege a deliberate indifference claim against Rufino. As an initial matter, the Complaint does not allege any facts from which the Court can reasonably infer that Rufino (rather than someone else at the Jail) is personally responsible for the fact that Birdo was not taken to the HCMC orthopedic clinic on July 13 (or any other date) or that Rufino (rather than someone else at the Jail or HCMC) is personally responsible for the fact that he did not see an orthopedic surgeon and receive knee replacement surgery. Birdo's deliberate indifference claims against Rufino fail because he has not alleged any misconduct by Rufino that would render her personally liable. *See Krigbaum*, 808 F.3d at 340; *Pinson*, 2020 WL 6121357, at *10 (citing *Iqbal*, 556 U.S. at 676) ("[Plaintiff] claims that the defendants improperly discontinued her mental health medications. However, she has not alleged that the named defendants were responsible for prescribing or altering such medications. In a lawsuit against a governmental actor, that official must have violated the Constitution through their own

---

[7]    To the extent Birdo bases constitutional claims on alleged violations of the Jail's grievance policy (*see* Dkt. 1 ¶¶ 9, 10; Dkt. 47 at 3), those claims would fail, and the Court recommends their dismissal. "'[T]here is no federal constitutional liberty interest in having . . . prison officials follow prison regulations.'" *Hernandez-Pacheco v. Fisher*, No. CIV. 10-2088 JRT/TNL, 2011 WL 4929417, at *7 (D. Minn. Sept. 12, 2011) (quoting *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)), *R.&R. adopted*, 2011 WL 4808187 (D. Minn. Oct. 11, 2011); *see also Jackson v. Gutzmer*, No. CV 16-3831 (JRT/BRT), 2019 WL 952182, at *6 (D. Minn. Feb. 27, 2019) ("'[A] violation of prison regulations in itself does not give rise to a constitutional violation.'") (quoting *Bonner v. Fed. Bureau of Prisons*, 196 F. App'x 447, 448 (8th Cir. 2006)), *aff'd*, 784 F. App'x 472 (8th Cir. 2019).

actions.  Because [plaintiff] fails to articulate a specific claim against the particular
defendants, dismissal is warranted.").

Next, to the extent Birdo's claim is based on the fact that he was not able to attend
a particular appointment on July 13, 2020, the August 6 grievance shows that Birdo did
see Physician Assistant Hoenisch from the HCMC orthopedic clinic around that time
(Dkt. 34-1, Ex. 2 at 2), and the August 6 and August 15 grievances show that follow-up
appointments were scheduled, including for August 2020 (*id.* at 2, 4).  Birdo has not
plausibly alleged a constitutional violation based on a missed appointment where the
Complaint and documents it embraces establish that he was receiving medical care from
an orthopedic provider and that the Jail had arranged for follow-up orthopedic care.  *See
Jenkins v. Cnty. of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009) ("The Constitution does
not require jailers to handle every medical complaint as quickly as each inmate might
wish.") (citing cases); *Traylor v. Hennepin Cnty. Adult Det. Ctr.*, No. 15-CV-2816
(JNE/TNL), 2016 WL 3647779, at *7 (D. Minn. May 27, 2016) (dismissing under Rule
12(b)(6) because plaintiff did not sufficiently allege subjective prong where "Plaintiff
received medical attention about one hour after his injury became known to Defendants"
and "Plaintiff's assertion that the ambulance should have been called sooner does not
raise the delay to a constitutional violation."), *R.&R. adopted*, 2016 WL 3647849 (D.
Minn. July 1, 2016); *Beane v. Hennepin Cnty. Jail*, No. CIV. 15-205 DWF/BRT, 2015
WL 4545374, at *3 (D. Minn. July 27, 2015) (adopting report and recommendation for
summary dismissal for failure to state a claim where "the facts alleged in his complaint
undercut any suggestion that the defendants, particularly Officer Collins and the

examining nurse, deliberately disregarded that need" because "[a]ccording to Beane's own allegations, neither Officer Collins nor the jail nurse turned a blind eye to his complaints about his cut; instead, Collins summoned the nurse to examine Beane's injury and, after examining the cut, the nurse concluded in her professional opinion that Beane had no need for antibacterial cream").

To the extent Birdo's claims are based on the fact that he did not see an orthopedic surgeon and did not receive knee replacement surgery, he has not plausibly alleged a constitutional violation as to Rufino.  Birdo alleges serious knee pain, that his knees were "bone on bone," and that he at times experienced difficulty walking and sleeping.  (Dkt. 1 ¶¶ 11-12, 14.)  However, the grievances establish that he had previously received steroid injections for his knees, although they were "on hold" due to his tooth abscess and would be restarted once he was off antibiotics for two weeks.  (Dkt. 34-1, Ex. 2 at 2.)  They also establish that the Jail did not ignore his medical complaints, but in fact took him to the HCMC orthopedic clinic for treatment.  (*Id.* at 2, 4.)  As alleged, Birdo's claims that he should have seen an orthopedic surgeon (rather than a PA) and received knee replacements rather than a course of injections and follow-up care constitute a difference of opinion as to the appropriateness of his treatment.  Notably, neither the Complaint nor the grievances suggest that any medical provider believed Birdo needed to consult with an orthopedic surgeon or required knee replacement surgery, much less immediately required either.  "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation."  *Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1118-19 (8th

Cir. 2007) (cleaned up); *see also Lewis v. Jackson*, No. 5:15CV00027-BRW-JJV, 2015 WL 853404, at *3 (E.D. Ark. Feb. 24, 2015) ("Plaintiff alleges that upon his arrival at the Tucker Unit, he informed Defendant Hamilton about his shoulder injury and requested treatment. He claims that Defendant Hamilton instructed him to submit a sick call request and otherwise ignored him. This allegation fails to establish a viable claim. Defendant Hamilton's decision to instruct Plaintiff to submit a sick call rather than provide immediate treatment is insufficient to sustain a claim for deliberate indifference against him. Notably, Plaintiff provides no specific allegations that the prognosis for his already injured shoulder was negatively affected by the two-day delay between his Monday arrival (when he saw Defendant Hamilton) and his Wednesday treatment.") (citing *Jenkins*, 557 F.3d at 633) (record citations omitted); *McGuire v. Bryson*, No. 4:14CV1261 SPM, 2014 WL 4467849, at *3 (E.D. Mo. Sept. 9, 2014) (dismissing action where plaintiff alleged that he suffered from plantar fasciitis and complained that he did not receive immediate treatment, concluding that plaintiff's allegations did not show that doctor was deliberately indifferent to his condition because defendant-doctor responded to his complaints of heel pain with increased treatment over time and "the delays plaintiff complains of are typical both in prison and in ordinary life for a condition like plantar fasciitis"); *Frye v. Minn. Dep't of Corr.*, No. 05-1327JNEJJG, 2006 WL 2502236, at *2 (D. Minn. Aug. 29, 2006) (granting motion to dismiss because deliberate indifference "cannot be based on a difference of opinion as to proper treatment, or on allegations that the medical treatment was negligent," and "[w]here a plaintiff has received consistent treatment for a medical condition such as chronic pain, and that plaintiff only complains

that some other course of care is needed, there is no basis for a claim of deliberate indifference") (citations omitted).

Further, "[u]nder this subjective prong, the evidence must show that the officers recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015) (cleaned up).  Although Birdo has alleged serious pain and intermittent difficulty walking and sleeping, he has not alleged any facts supporting the conclusion that Ruffino recognized a substantial risk of harm to him and knew her conduct was inappropriate in light of that risk.  *See Thorpe v. Martin*, No. 3:16-CV-737(RNC), 2017 WL 4366971, at *1 (D. Conn. Sept. 30, 2017) (dismissing under Rule 12(b)(6) where prisoner "alleges that he has degenerative joint disease, which causes severe pain on a daily basis" and disagreed with doctor's refusal to authorize knee replacement surgery because "[t]here are no allegations in the complaint that Dr. Maurer has disregarded an excessive risk to the plaintiff's health or safety by failing to authorize the surgery").  These allegations are insufficient to plausibly allege "more than even gross negligence," and in fact "a mental state akin to criminal recklessness." *See Jackson*, 756 F.3d at 1065 (cleaned up).  The Court recommends dismissal of Birdo's deliberate indifference claims against Rufino to the extent they are based on the fact that he did not see an orthopedic surgeon or receive knee replacement surgery.

### 2.    Equal Protection Claim Against Rufino

The Court next addresses Birdo's claim of unequal treatment in violation of the Fourteenth Amendment.  Rufino argues that the "Complaint has failed to establish as a

threshold matter the detailed account and nature of unequal treatment" and "also fails to plead any allegations specifically pertaining to Defendant Rufino and how she may have subjected him to unequal treatment."  (Dkt. 33 at 11-12.)

The Equal Protection Clause requires state actors to treat similarly situated persons alike, but state actors do not violate the Equal Protection Clause if they treat dissimilarly situated persons dissimilarly.  *See Ganley v. Minneapolis Park & Recreation Bd.*, 491 F.3d 743, 747 (8th Cir. 2007) (citations omitted).  "As a threshold matter, in order to state an equal protection claim, [a plaintiff] must have established that he was treated differently from others similarly situated to him."  *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004) (cleaned up) (quoting *Johnson v. City of Minneapolis*, 152 F.3d 859, 862 (8th Cir. 1998)); *see also Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist.*, 813 F.3d 1124, 1129 (8th Cir. 2016) (quoting *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015)) ("To state a class-of-one claim, the plaintiff must . . . provide a specific and detailed account of the nature of the preferred treatment of the favored class, especially when the state actors exercise broad discretion to balance a number of legitimate considerations.") (cleaned up; ellipses in *Higgins*).

First, Birdo has not alleged any facts from which the Court could infer that Rufino is personally involved in any alleged unequal treatment.  His equal protection claim fails for this reason alone.  *See Krigbaum*, 808 F.3d at 340; *Pinson*, 2020 WL 6121357, at *10.

Second, Birdo's claim fails because the Complaint only generally alleges that "[o]ther residents have been taken outside for medical issues." (Dkt. 1 ¶ 13.)[8] Birdo does not allege that those "other residents" are similarly situated to him, much less allege how they are similarly situated, what their "medical issues" are, or any other facts from which the Court could reasonably infer any equal protection violation. *See Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1015 (8th Cir. 2013) (citing *Twombly*, 550 U.S. at 555) (holding that allegations did not state a § 1983 equal protection claim for gender discrimination because plaintiff's "conclusory assertion that she was discharged under circumstances similarly situated men were not imports legal language couched as a factual allegation and fails to raise a right to relief above the speculative level"). Consequently, the Court recommends dismissal of Birdo's equal protection individual capacity claim against Rufino.[9]

### 3.    Ninth Amendment Claim Against Rufino

Birdo also asserts a claim under the Ninth Amendment as follows: "Other residents have been taken outside for medical issues. Not me unfair. Violation 14th

---

[8]    Birdo also alleges, "I'm sixty three years. My medical needs see a [sic] orthopedic not met. Unequal treatment! Deliberate indifference." (Dkt. 1 at ¶ 15.) To the extent Birdo means to state a theory of unequal treatment other than that others were taken to medical care outside of ADC while he was not, this allegation does not sufficiently allege the details of the preferred treatment of the favored class nor the specific treatment of Birdo at issue.

[9]    Birdo's Response was no more specific as to the alleged unequal treatment. (*See* Dkt. 47 at 2 ("Not being able to see an orthopedic. Appointments rejected. Violation of the 14th Amendment. Deny any person within it's [sic] jurisdiction the Equal Protection of the Law. I've suffered with osteoarthritis for many decades.").)

Amendment.  9th Amendment."  (Dkt. 1 ¶ 13.)  This claim is not mentioned in the Response.  (*See* Dkt. 47.)  Rufino argues that "the Ninth Amendment has never been recognized as independently securing any constitutional right for purposes of pursuing a civil rights claim" (citation omitted) and additionally that "Plaintiff provides no factual support to justify a claim that Defendant Rufino violated his Ninth Amendment rights." (Dkt. 33 at 12-13.)

The Ninth Amendment provides, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const. amend. IX.  "[T]hough the Ninth Amendment protects some rights not covered by other amendments, it 'has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim.'"  *Carter v. Rysh*, No. 17-CV-1061 (DWF/HB), 2018 WL 3802082, at *3 (D. Minn. July 13, 2018) (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986)), *R.&R. adopted*, 2018 WL 3785169 (D. Minn. Aug. 9, 2018).  The Court accordingly concludes that Birdo has failed to state a claim under the Ninth Amendment and recommends dismissal of Birdo's Ninth Amendment individual capacity claim against Rufino.

### 4.    Qualified Immunity as to Rufino

Rufino also argues, "Even if this Court could find a plausible constitutional claim within Plaintiff's Complaint, Defendant Rufino is immune from suit based on the qualified immunity defense doctrine."  (Dkt. 33 at 13.)

"The doctrine of qualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a

statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 757 (2014) (cleaned up); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866-67 (2017) (discussing qualified immunity and citing cases); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). "[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity 'must show that they are entitled to qualified immunity on the face of the complaint.'" *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016) (quoting *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005)). The pleading standard under *Iqbal* and *Twombly* (*see supra* Section II) applies. *Wood*, 572 U.S. at 757-58.

The Court concludes in Sections III.B.1-3 that Birdo has failed to plausibly allege any claim under the Eighth, Ninth, or Fourteenth Amendments of the U.S. Constitution or, if such a violation occurred, that it was Rufino who violated a constitutional right. Consequently, Birdo has not plausibly alleged a violation of a statutory or constitutional right and thus has not met the first prong of *Wood*.

Even if Birdo's allegations were enough to allege a violation of a constitutional right, the Court further concludes that any such right as asserted by Birdo was not "clearly established." The U.S. Supreme Court has defined this requirement as follows:

> "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. In other words, existing law must have placed

22

the constitutionality of the officer's conduct "beyond debate." This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law."

To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority.'" It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that "every reasonable official" would know.

The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." This requires a high "degree of specificity." We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established."

*D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (citations omitted). The Court concludes that Birdo's allegations do not preclude application of qualified immunity because they do not identify any controlling authority or show a robust consensus of cases of persuasive authority that would clearly prohibit Rufino's conduct under the particular circumstances of this case.

"It is clear that a pretrial detainee has a constitutional right to adequate medical care while in custody." *Dadd v. Anoka Cnty.*, 827 F.3d 749, 756 (8th Cir. 2016) (citation omitted). But that right is not specific enough. Birdo cites no case, much less a robust consensus of cases or controlling authority, showing that Rufino should have known that

she was required to provide Birdo with access to an appointment on July 13 (rather than other dates in that time frame), as well as access to an orthopedic surgeon and knee replacement surgery—notwithstanding the absence of any medical provider's opinion that specific type of care was necessary.

As to Birdo's other claims, the Court is aware of no authority requiring jail officials to take every prisoner with a medical complaint "outside" for treatment, which is the level of specificity of Birdo's equal protection claim. Finally, the Court is aware of no authority establishing the Ninth Amendment as an independent avenue to vindicate rights. The Court therefore recommends dismissal of the individual capacity claims against Rufino on qualified immunity grounds as well as on the merits.

### 5. Individual Capacity Claims Against Dave Hutchinson

Birdo's sole allegation against Hutchinson is that "Sheriff Dave Hutchinson is responsible for the sole decisions, employee actions and over staff at [ADC]." (Dkt. 1 ¶ 7.) Hutchinson argues that Birdo has failed to plausibly allege any individual capacity claim against him. (Dkt. 26 at 5-6; *see also id.* at 7 (regarding Eighth Amendment claim, arguing that the Complaint does not allege that Hutchinson knew of but deliberately disregarded medical need or what Hutchinson did, or failed to do, that allegedly violated any constitutional right); *id.* at 8 (regarding Fourteenth Amendment claim, arguing that claim fails because Complaint does not allege that Hutchinson engaged in any form of discriminatory practice and that Birdo is similarly situated to the others treated more favorably); *id.* at 9 (regarding Ninth Amendment, Complaint fails to allege Hutchinson engaged in conduct that violated a right under the Ninth Amendment).)

The Court agrees with Hutchinson. "Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (cleaned up); *see also Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 676) (doctrine of vicarious liability inapplicable in § 1983 suits). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, the plaintiff must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (cleaned up). "While the doctrine of respondeat superior does not apply to § 1983 cases, a supervisor may still be liable under § 1983 if either his direct action or his 'failure to properly supervise and train the offending employee' caused the constitutional violation at issue." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (quoting *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001)); *see also A.H. v. St. Louis Cnty., Mo.*, 891 F.3d 721, 7228 (8th Cir. 2018) ("In an action under § 1983, a municipality . . . and its supervisor cannot be liable on a respondeat superior theory, but can be held liable if a constitutional violation resulted from a municipal policy or custom. That liability attaches in two situations, where a municipal policy is itself unconstitutional, and where the municipality's deliberate indifference to the need to train and supervise its employees causes an employee to violate a third party's constitutional rights.").

Here, Birdo has not alleged facts relating to an allegedly unconstitutional policy or failure to train and supervise, nor has he alleged any conduct by Hutchinson. His only allegation as to Hutchinson relies on his supervisory responsibility for ADC employees

(*see* Dkt. 1 ¶ 7), that is, a respondeat superior theory.    That is precisely the time of claim that is precluded under § 1983.  *See Ferch*, 2016 WL 916416, at *2 ("[A] supervisor, such as Warden Jett, cannot be liable for the acts of a subordinate simply due to the relationship between them, and Ferch has failed to demonstrate any basis of liability."). policy").  Consequently, the Court recommends dismissal of all individual capacity claims against Hutchinson for failure to state a claim upon which relief can be granted.

Hutchinson also sought dismissal on qualified immunity grounds.  (Dkt. 26 at 10.) Given the lack of detail (or allegations) regarding Hutchinson, the Court does not reach this issue.

## C.    Official Capacity Claims

Birdo's Complaint states that Defendants are also sued in their official capacities. (Dkt. 1 at 6.)  Hutchinson argues that the "Complaint alleges no facts that suggest that Hennepin County had an unconstitutional policy or custom that harmed Plaintiff or that Hennepin County failed to properly train its employees."  (Dkt. 26 at 12.)  Rufino argues that (1) the *Monell* claim must "be dismissed because [Birdo] has failed to plausibly allege that Defendant Rufino or Hennepin County violated his constitutional rights," (2) the "allegation against Defendant Rufino [that she failed to follow the grievance policy] fails to claim that a municipal policy caused his constitutional rights to be violated," and (3) the claims are based on a "a single incident of alleged wrongful conduct" and "fail[] to provide any factual support to show the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by Defendant Rufino or other municipal employees."  (Dkt. 33 at 7-8.)

"A suit against a government official in his or her official capacity is 'another way of pleading an action against an entity of which an officer is an agent.'" *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)); *see also Alexander*, 718 F.3d at 766 ("Because a suit against a public employee in his or her official capacity is merely a suit against the public employer, the amended complaint was required to state a claim for municipal liability.") (cleaned up).  Under § 1983, a local government (such as a county government) is subject to liability only "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 692); *see also Al-Kadi v. Ramsey Cnty.*, No. 16-CV-2642 (JRT/TNL), 2019 WL 2448648, at *15 (D. Minn. June 12, 2019) (quoting *Connick*).  For a governmental entity to itself subject someone to a deprivation, it is not enough that the entity's employees do the depriving: "local governments are responsible only for their *own* illegal acts" and "are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60 (citations and marks omitted); *see also LaBeau v. Sorenson*, No. 18-CV-0651 (NEB/LIB), 2019 WL 7284109, at *5 (D. Minn. Dec. 27, 2019) (quoting *Connick*).

"Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Gladden v. Richbourg*, 759 F.3d 960, 968 (8th Cir. 2014) (cleaned up); *see also Alexander*, 718 F.3d at 766.  A municipal entity's liability can result from "(1) an official

municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019) (quotation marks omitted) (quoting *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 699 (8th Cir. 2016)); *see also Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013) (citations omitted).

Here, the relevant government entity is Hennepin County. (*See* Dkt. 26 at 11 (as Hutchinson is the Hennepin County Sheriff, claims should be treated as against Hennepin County); Dkt. 33 at 5 (claim against Rufino must be construed as against Hennepin County).) Birdo's official capacity claims against Hennepin County fail for several reasons. First, the Court has concluded that the Complaint does not plausibly allege any violation of constitutional rights by an individual official. *See LaBeau*, 2019 WL 7284109, at *5 ("'Without a constitutional violation by the individual officers, there can be no § 1983 or *Monell* failure to train municipal liability.' *Saunders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007) (citations omitted). Because LaBeau cannot establish that Deputy Sorenson violated her constitutional rights, her § 1983 claims against the County fail.").

Second, even if a violation of constitutional rights had been plausibly alleged, the only policy alleged in the Complaint is the grievance policy, but, as Rufino argues, Birdo does not argue the policy was unconstitutional, he only argues that Jail staff did not follow the policy by failing to respond to the grievance within seven days. (Dkt. 33 at 7 (quoting Dkt. 1 ¶ 10).) Similarly, the single violation of the grievance policy does not plausibly allege a custom, let alone a custom causing constitutional injury. *See Ulrich v.*

*Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (isolated incident of alleged police misconduct cannot establish a municipal policy or custom creating liability under § 1983); *Russell v. Hennepin Cnty.*, 420 F.3d 841, 849 (8th Cir. 2005) ("At most, the record shows a single deviation from an official policy. . . . [A] single instance of failing to follow official policy is insufficient to establish a custom of violating the policy.").) Thus, to the extent Birdo alleges the existence of a policy or custom at all, the policy or custom itself is not sufficiently plausibly alleged, nor is its unconstitutional nature or results.

Third, no other policy or custom, or failure to train or supervise, is alleged. Numerous cases explain how to allege such claims, but reviewing that precedent is unnecessary here, as the Complaint fails to say anything about any policy, custom, or failure to train or supervise leading to the alleged constitutional violations at issue, or how each Defendant enacted or enforced an unconstitutional policy or custom, or manifested a deliberate indifference to a failure to train or supervise. *See, e.g.*, *Ulrich*, 715 F.3d at 1061 ("There must be a causal connection between the municipal policy or custom and the alleged constitutional deprivation in order to state a valid claim under § 1983.") (listing requirements for stating a viable § 1983 claim for failure to adequately supervise and train); *Young Am.'s Found. v. Kaler*, 370 F. Supp. 3d 967, 980 (D. Minn. 2019) ("[W]hether suing a state defendant in their official or individual capacity, a plaintiff must plausibly allege that that official had some kind of personal involvement with the purportedly unconstitutional policy or action."); *id.* at 981 (concluding that allegations that university president "is 'responsible for the enactment, implementation,

and enforcement of [university] policies affecting students, student organizations, faculty, and guests'" and that the university held a press conference about the event underlying the claims "show nothing more than a 'sheer possibility' that" the president "is responsible for the creation and enforcement of" the policy at issue).

For all of the reasons stated above, the official capacity § 1983 claims against Defendants should be dismissed for failure to state a claim for relief.

### D.    Dismissal With or Without Prejudice

Defendants seeks dismissal with prejudice.  (Dkts. 29, 38 (proposed orders).) "Federal courts have disagreed to some extent over whether a dismissal under Rule 12(b)(6) is normally one with prejudice or without prejudice." *Miles v. Simmons Univ.*, No. 20-CV-2333 (ECT/KMM), 2021 WL 195798, at *7 (D. Minn. Jan. 20, 2021) (internal quotation marks and citation omitted) (reviewing Eighth Circuit precedent and concluding that "courts ultimately have discretion to decide between a with-prejudice and without-prejudice dismissal").  Here, given that Birdo has filed a single Complaint, the Court recommends dismissal without prejudice. *See Holmseth*, 2015 WL 4488424, at *20 ("There is a split in practice among the Federal courts about whether a Rule 12(b)(6) dismissal is normally one with prejudice or without prejudice.  While the Eighth Circuit does not appear to have addressed the issue directly, decisions from the Eighth Circuit and this Court generally favor dismissals under Rule 12(b)(6) without prejudice, at least where there is no evidence of persistent pleading failures.") (footnote omitted) (collecting Eighth Circuit cases); *id.* at n.12 (collecting cases from other Circuits).

## IV.   **RECOMMENDATION**

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1.      Defendant Dave Hutchinson's Motion to Dismiss (Dkt. 25) be **GRANTED**;

2.      Defendant Jocelyn RN's Motion to Dismiss (Dkt. 31) be **GRANTED**; and

3.      This action be **DISMISSED WITHOUT PREJUDICE**.


DATED: July 28, 2021                          *s/Elizabeth Cowan Wright*
                                             ELIZABETH COWAN WRIGHT
                                             United States Magistrate Judge


## **NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).